# Supreme Court of Texas

### No. 21-0161

Mosaic Baybrook One, L.P., Mosaic Baybrook Two, L.P., and
Mosaic Residential, Inc.,

*Petitioners*,

v.

Tammy Cessor,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued September 21, 2022**

JUSTICE BUSBY delivered the opinion of the Court.

This is an interlocutory appeal from an order certifying a class
action regarding claimed violations of section 92.019 of the Property
Code, which regulates Texas landlords' ability to impose late fees on
tenants who fail to pay their rent on time. Petitioners Mosaic Baybrook
One, L.P., Mosaic Baybrook Two, L.P., and Mosaic Residential, Inc.

(collectively, "Mosaic"[1]) argue that the trial court abused its discretion in certifying a class for two reasons.

First, Mosaic contends the trial court failed to conduct a rigorous analysis of how the requirements for class certification apply to the plaintiff's cause of action because it did not resolve potential legal disputes regarding the statute's meaning. This argument fails because Mosaic has not shown how the trial court's decision to resolve these merits disputes—which the parties had not yet teed up for decision—on a class-wide basis undermines any of the certification requirements.

Second, Mosaic contends the trial court did not comply with Texas Rule of Civil Procedure 42(c)(1)(D), which required it to include the elements of Mosaic's defenses in the trial plan and address their effect on the requirements for class certification. These defenses were raised in a late amended answer, and the parties neither moved for leave to file the answer nor moved to strike it. Because the plaintiff has not objected to the amendment under Rule of Civil Procedure 63, we hold the trial court abused its discretion by failing to address the defenses. We therefore reverse the court of appeals' judgment and the certification order, and remand to the trial court for further proceedings.

---

[1] Mosaic Baybrook One, L.P. and Mosaic Baybrook Two, L.P. each owned one of the two parcels of land on which Tammy Cessor's apartment complex was located. Mosaic Residential, Inc. served as the management company and employed the relevant personnel for Mosaic's operations at Cessor's complex.

2

Baybrook Village is a residential apartment complex near Houston that includes over 700 apartment units.  When Mosaic acquired the property in 2015, it imposed a uniform late-fee policy on tenants at Baybrook Village.   Mosaic's standard lease included the following provision:

> If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $100.00, plus a daily late charge of $10.00 per day after that date until the amount due is paid in full.  Daily late charges cannot exceed 15 days for any single month's rent.  We won't impose late charges until at least the third day of the month.

Late-paying tenants were also required to repay Mosaic any rent concessions they had received:

> The initial late fee will be assessed if the account balance is not paid in full on or before the office opens on the 4th.  ALL ACCOUNTS REFLECTING LATE RENTAL PAYMENTS ARE SUBJECT TO CONCESSION CHARGE BACK WHERE APPLICABLE AS WELL AS LATE CHARGES DUE PER THE TAA LEASE AGREEMENT.

Mosaic determined its fee schedule on a property-wide basis and put it into effect on May 6, 2015.  The record shows that in setting the late fees for Baybrook Village, Mosaic considered a variety of factors, including the average monthly rent, the average number of delinquent rent accounts per month, and the average number of delinquent accounts that never pay at all, as well as the cost of readying an evicted tenant's apartment for a new tenant.  Mosaic's calculation also included certain overhead costs—such as the salaries of employees tasked with generating and delivering the required notices to late-paying tenants—

3

and the loss of the use of funds during the delay in payment. Finally, Mosaic considered what its "competitive set" in the local industry was charging and limited its late fee accordingly.

In a typical month, Mosaic would automatically assess fees for late payment of rent on eighty or more of its over 700 apartment units. From May 1, 2015, to September 30, 2017, Mosaic's charges to Baybrook Village tenants for late payment of rent amounted to almost $280,000, and Mosaic assessed additional amounts to recoup rent concessions it had previously granted.

In July 2016, Respondent Tammy Cessor leased an apartment at Baybrook Village from Mosaic. Although the monthly base rate for Cessor's unit was $950, Mosaic gave her a rent concession that, when applicable, lowered her monthly rent to $858. Realizing she would not be able to make a timely payment of her full rent for August, Cessor contacted Mosaic. Mosaic told Cessor to pay the $510 she was able to pay on August 1, then pay the rest within ten days. Although Cessor paid the $510 as instructed, Mosaic posted a notice on Cessor's door that (1) showed late fees had been added to the amount due for August rent, and (2) threatened to evict her if she did not pay the balance within three days. Cessor paid the $348 balance roughly a week later. Mosaic then charged Cessor $130 in late fees and required Cessor to repay Mosaic $92 for the rent concession she had received.

In February 2017, Cessor sued Mosaic for breach of section 92.019 of the Texas Property Code, which governs landlords' ability to assess late fees on rent, on behalf of herself and a class of others similarly situated. The following month, Mosaic filed its original answer, which

4

included a general denial and did not assert any affirmative defenses. The parties' agreed docket control order set a deadline of June 16, 2018, for amending and supplementing pleadings without leave of court.

Cessor filed a Rule 42 motion for class certification in July 2018, in compliance with the docket control order. Cessor also attached a proposed trial plan to her motion. Over two months after the deadline to respond, Mosaic filed its opposition to class certification on October 26. Mosaic's response did not deny that the class holds all legal questions in common and did not reference the statute of limitations or any other affirmative defense. Instead, Mosaic argued that any class certification would be based on a significant misunderstanding of the law because "the mandatory 'rigorous analysis'" that Rule 42 requires "ha[d] not been conducted." Opting to rely on Cessor's burden of proof as movant, Mosaic complained that Cessor "has not presented any issues to this Court that would permit the required rigorous analysis to be conducted" without offering its own suggestions of what that analysis should encompass aside from the "proper consideration of the viability of [Cessor's] claim, as a matter of law."

On November 9, without seeking or obtaining leave of court, Mosaic filed an amended answer that raised several affirmative defenses for the first time, including that Cessor's claims were barred by a two-year statute of limitations. Three days later, on November 12, the trial court held a full-day hearing on class certification. The belated defenses were not mentioned at the hearing.

5

On November 20, the trial court signed an order granting Cessor's opposed motion for class certification. Subject to certain exclusions, the trial court certified the following class:

> All current or former residential tenants of Baybrook Village Apartments under written leases where one of the Defendants was the owner, and who, during the Class Period [of May 1, 2015, to September 30, 2017], were charged a rent late fee that Defendants' records show was paid.

The order identified the class claim as a "[s]tatutory claim for violation of Texas Property Code § 92.019 resulting from charging and collecting late fees and charging back rent concessions" and listed the following issues of law and fact common to the members of the class:

- "Did Defendants comply with Section 92.019 in charging and collecting rent late fees?"
- "Did Defendants conduct an estimate of their damages?"
- "Was the estimate of damages resulting from late payment of rent?"
- "Is $100/10 a reasonable estimate of damages resulting from late payment of rent?"
- "Is the chargeback of a rent concession after late payment a 'sum of money required to be paid under the lease if rent is not paid' on time under Section 92.019?"
- "Do 'employee salaries and other fixed overhead costs' constitute 'damages' under Section 92.019 and under Texas jurisprudence on contract damages?"

6

With respect to individualized issues, the trial court found "that the only issues of fact regarding individual class members are the amount of the charges and the amount of the payments," and that "very little time will be expended on any individual issues relating [to] the quantum of the charges assessed and paid." The court also noted that it had reviewed Cessor's proposed trial plan, which the court "believes explains in adequate detail how this matter can proceed on a manageable, classwide basis."[2]

Mosaic filed a timely interlocutory appeal of the trial court's class certification order. The court of appeals affirmed, holding that the record demonstrated the trial court had conducted the rigorous analysis required under Rule 42. 648 S.W.3d 299, 305-06 (Tex. App.—Houston [1st Dist.] 2020). We granted Mosaic's petition for review.

## ANALYSIS

Mosaic contends that the class certification order does not conduct a rigorous analysis of the class claim under the Rule 42 prerequisites because it does not (1) adequately analyze the merits of that claim or (2) list the elements of Mosaic's defenses. As explained below, we conclude that the first challenge does not require reversal. It is not enough for Mosaic to suggest the existence of potential latent ambiguities in the trial court's treatment of section 92.019. Mosaic must

---

[2] This Court has jurisdiction to review an interlocutory appeal of an order certifying or denying certification of a class action." *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 51.014(a)(e); TEX. GOV'T CODE § 22.225(d)).

7

also explain how such ambiguities undermined the rigorous analysis of the claim required by Rule 42, which Mosaic has not done.

The trial court did abuse its discretion, however, in failing to address the defenses Mosaic raised in its late amended answer. Because Cessor has not objected to the amendment, the trial court had no discretion under Rule 63 to refuse to consider the defenses. The court must therefore reexamine Rule 42's requirements in light of the applicable defenses as well.

## I. Standard of review and applicable law

"A class action is an extraordinary procedural device designed to promote judicial economy by allowing claims that lend themselves to collective treatment to be tied together in a single proceeding." *Riemer v. State*, 392 S.W.3d 635, 639 (Tex. 2013). Rule 42 of the Texas Rules of Civil Procedure governs class certification.

"We review a class certification order for abuse of discretion." *Bowden*, 247 S.W.3d at 696. "In order to maintain a class action, Rule 42 requires that plaintiffs meet each of the requirements under 42(a) and at least one of the requirements under 42(b)." *Union Pac. Res. Grp. v. Hankins*, 111 S.W.3d 69, 73 (Tex. 2003). Thus, all class actions must satisfy four threshold requirements:

> (1) numerosity—the class is so numerous that joinder of all members is impracticable; (2) commonality—there are questions of law or fact common to the class; (3) typicality— the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation—the representative parties will fairly and adequately protect the interests of the class.

*Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 438 (Tex. 2007). Litigants relying on Rule 42(b)(3), as Cessor does, must also show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. 42(b)(3).

"These protections are not only procedural safeguards but are based in the Due Process clauses of the United States and Texas Constitutions to ensure that plaintiffs, whose interests are represented by another, have notice and opportunity to be heard in the proceedings and that the class representative adequately represents their interests." *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 919 (Tex. 2010). Thus, "[c]ompliance with Rule 42 must be demonstrated; it cannot merely be presumed." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002).

The parties dispute the extent to which a trial court should make rulings on the merits of claims and defenses in deciding whether to certify a class, but the precedent on that question is clear: merits questions should be resolved to the extent they bear on the rigorous analysis of the claims and defenses required by Rule 42. A trial court "must apply a rigorous analysis to determine whether all certification requirements have been satisfied." *Bowden*, 247 S.W.3d at 696. "[W]hile deciding the merits of the suit in order to determine . . . its maintainability as a class action is not appropriate, the substantive law . . . must be taken into consideration in determining whether the purported class can meet the certification prerequisites." *Exxon Mobil*

9

*Corp. v. Gill*, 299 S.W.3d 124, 126 (Tex. 2009) (per curiam) (cleaned up). A court must go beyond the pleadings and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).[3]

"Although it may not be an abuse of discretion to certify a class that could later fail," it is "improper to certify a class without knowing how the claims can and will likely be tried." *Id.* at 435. The federal class action rule is similar to our Rule 42, but subpart (c)(1)(D) of our rule adds that a certification order must expressly include certain statements, including "the elements of each claim or defense asserted in the pleadings" and "how the class claims and any issues affecting only individual members, raised by [those] claims or defenses . . . , will be tried"[4]—which we refer to as a "trial plan." Mandating that trial courts proceed step by step through these requirements serves two functions: it not only guides trial courts in "fulfill[ing] [their] obligation to rigorously analyze all certification prerequisites," but also "allow[s] reviewing

---

[3] Although Rule 42 lists some additional requirements for class certification orders that do not appear expressly in Federal Rule of Civil Procedure 23, Rule 42 is patterned after Rule 23 in many respects, and we have found federal decisions interpreting current federal class action requirements instructive. *See, e.g., Riemer*, 392 S.W.3d at 639; *Bernal*, 22 S.W.3d at 433, 435 (adopting rigorous analysis requirement from federal decisions).

[4] TEX. R. CIV. P. 42(c)(1)(D)(i), (viii). The rule requires that these statements be included in the order, not that the court prepare "a 'trial plan' by that name, set out in a separate document." *Henry Schein*, 102 S.W.3d at 689.

courts to assure that *all* [prerequisites] have been satisfied." *State Farm Mut. Auto Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004).

Thus, as we explain today in *American Campus Communities v. Berry*, a court's task in applying Rule 42 "is to correctly understand the law governing the nature and elements of the claim and to gauge the claim's suitability for class resolution on the basis of that understanding." __ S.W.3d __, __, slip op. at 14 (Tex. Apr. 21, 2023) (No. 21-0874). "To be sure, the court's task at the class certification stage is not to set out to decide the merits of the lawsuit," *id.*, so it need not settle every legal dispute prior to certification.[5] But the certification order must "identify the specific causes of action to be decided" and "indicate how they would be tried or the substantive issues that would control their disposition." *Lopez*, 156 S.W.3d at 557; *see also Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (holding trial courts "must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution").

If the defendant contends the proposed class claim has no basis in law, the court must resolve that contention prior to certification. *Berry*, __ S.W.3d at __, slip op. at 1. In addition, the court must resolve legal disputes that "[a]ffect . . . the requirements for class certification," *Gill*, 299 S.W.3d at 129, and "respond to the defendants' legitimate protests of individualized issues that could preclude class treatment."

---

[5] *See* TEX. R. CIV. P. 42(c)(1)(D)(ii)-(iii) (requiring certification order to address whether issues of law that remain to be resolved are "common to the class members" or "affect[] only individual class members").

11

*Chavez*, 957 F.3d at 546; *see also Prantil v. Arkema Inc.*, 986 F.3d 570, 579 (5th Cir. 2021) ("A certification order ought to reflect the district court's consideration of a defendant's weightiest arguments against certification.").

Here, the cause of action asserted on behalf of the plaintiff class concerns alleged violations of section 92.019 of the Texas Property Code. At all times relevant to this appeal,[6] this statute provided:

> (a) A landlord may not charge a tenant a late fee for failing to pay rent unless:
>
>> (1) notice of the fee is included in a written lease;
>>
>> (2) the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent; and
>>
>> (3) the rent has remained unpaid one full day after the date the rent was originally due.
>
> (b) A late fee under this section may include an initial fee and a daily fee for each day the rent continues to remain unpaid.
>
> (c) A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees.
>
> (d) A provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void.

---

[6] The Legislature amended section 92.019, effective September 1, 2019, to provide further guidance regarding what late fees are considered "reasonable." Act of May 14, 2019, 86th Leg., R.S., ch. 629, §§ 3-4, 2019 Tex. Gen. Laws 1854, 1855.

(e) This section relates only to a fee, charge, or other sum of money required to be paid under the lease if rent is not paid as provided by Subsection (a)(3), and does not affect the landlord's right to terminate the lease or take other action permitted by the lease or other law. Payment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by this section.

TEX. PROP. CODE § 92.019.

## II. Rule 42 did not require the trial court to engage in additional merits analysis of Cessor's statutory claim.

Without challenging the trial court's finding that any particular class action requirement has been satisfied, Mosaic argues that the trial court failed to conduct a rigorous analysis by failing to resolve—or at least narrow—the parties' developing merits disputes regarding the requirements of the late-fee statute before certifying a class. Because Mosaic does not contend that the class claim has no basis in law, the proper resolution of these arguments turns on whether any failure by the trial court affects the requirements for class certification.

### A. The trial court was not required to conduct Mosaic's requested merits analysis absent any indication that doing so would affect Rule 42's requirements.

Mosaic first complains that Cessor "never requested that the trial court conduct any analysis of Section 92.019 before certifying a class, and the trial court did not independently conduct such analysis to comply with this Court's jurisprudence, such as by including that analysis in the class-certification order or trial plan." In Mosaic's view, the trial court's failure is evident from the absence of any analysis in the class certification order or trial plan. We disagree.

13

In *State Farm Mutual Auto Insurance Co. v. Lopez*, we reversed an order granting class certification because "the trial court did not identify the specific causes of action to be decided in [the] case, nor did it indicate how they would be tried or the substantive issues that would control their disposition." 156 S.W.3d at 557. That is not the situation we confront here.

The trial court certified a "[s]tatutory claim for violation of Texas Property Code § 92.019 resulting from charging and collecting late fees and charging back rent concessions." Under this statute, as the court recognized in its order, "a landlord may not charge a tenant a late fee for failing to pay rent unless the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from a late payment of rent." Unlike in *Lopez*, the trial court sufficiently "identif[ied] the specific causes of action to be decided in this case." *Lopez*, 156 S.W.3d at 557.

The trial court's order also identified "how [the claim] would be tried [and] the substantive issues that would control its disposition." The trial court found that (1) "[t]he focus of each of the causes of action alleged is on the conduct of the Defendants"; (2) "[t]here are no elements of the causes of action focused on any individual issues other than the quantum of the charges, which is objective data that can be obtained from Defendants' electronic databases"; and (3) the class "will prevail, or fail, in unison on the basis of the common proof that exists." The trial court further noted the absence of any difficulties in managing the putative class action because "[t]he data exists and is objectively verifiable both as to class membership and potential damages

14

(overcharges)"; for example, Mosaic's IT systems "record and retain all data about tenant fees charged, paid or credited which can be extracted with minimal effort."

The trial court therefore found that "all issues to be tried will be class-wide issues focused on [Mosaic's] compliance, or non-compliance, with the statutory requirements" and that "the benefits to the parties, the class members, and the judiciary of proceeding in this case as a class action outweigh any minimal administrative burdens that might exist." In this way, the trial court adequately "explain[ed] and appl[ied] the substantive law governing the plaintiffs' claims to the relevant facts . . . , articulating why the issues are fit for classwide resolution." *Chavez*, 957 F.3d at 546.

As we explain in Part III, however, the trial court did not do so with respect to Mosaic's defenses. *See id.* (requiring this analysis for "the relevant . . . defenses" as well). This failure to consider defenses affects the trial court's finding under Rule 42(b)(3) that the "classwide common issues described [in the order] will predominate over the individualized issues." Because the issues described by the court concerned only the elements of the cause of action and incorrectly excluded defenses, the court will need to reexamine the predominance requirement on remand by also considering the common and individualized questions that must be answered in deciding the applicable defenses.

15

**B.** **Unlike in *Cleven*, the trial court's order here allows common legal issues regarding the claim to be resolved on a class-wide basis.**

Mosaic also argues that the trial court may have certified the class based on an erroneous understanding of the statute establishing the cause of action and that its order conflicts with the Fifth Circuit's approach to conducting a rigorous analysis of this statute in *Cleven v. Mid-American Apartment Communities, Inc.*, 20 F.4th 171 (5th Cir. 2021). But the error the Fifth Circuit identified in *Cleven* was that the certifying court excluded full consideration of the fee's reasonableness from the list of issues of law and fact it identified as common to the class members, thereby skewing its analysis of the predominance requirement for certification. In contrast, the trial court in this case included the reasonableness issue as well as others, and Mosaic has not shown that any of the issues included are unsuitable for resolution on a class-wide basis.

*Cleven* addressed two separate putative class actions against the same landlord for violations of section 92.019 of the Texas Property Code. *Id.* at 173. "Plaintiffs in both cases alleged that [their landlord] violated section 92.019 because its late fee scheme [was] not a reasonable estimate of uncertain damages." *Id.* at 174. The plaintiff in one of the cases had argued that landlords must estimate their late payment damages before adding a late fee clause to a lease, and that a landlord's failure to do so is a *per se* violation of section 92.019. *Cleven v. Mid-Am. Apt. Communities, Inc.*, 328 F.R.D. 452, 464 (W.D. Tex. 2018). Similarly, the plaintiff in the other case argued that the landlord's "late-fee policy is not a reasonable estimate of uncertain

16

damages because it is not an estimate at all." *Brown v. Mid-Am. Apts.*, 327 F.R.D. 145, 150 (W.D. Tex. 2018). In both cases, the plaintiffs also contended in the alternative that "even if [the landlord's] standard late fee is the product of an estimate, that estimate was not a reasonable one." *Id.*[7] The court considered motions for partial summary judgment on that issue as well as for class certification.

"The district court, making an *Erie* guess, held that section 92.019 requires (1) an estimate of the landlord's late payment damages (2) that is made prior to charging a late fee." *Cleven*, 20 F.4th at 176-77. Because the district court accepted plaintiffs' argument that section 92.019 requires landlords to estimate a late fee in advance, it had no occasion to consider whether—as the landlord had argued in opposing certification—the reasonableness of a late fee is an individualized inquiry. *Id.* at 176. As the Fifth Circuit explained, "[t]he district court concluded that even if the late fee was in fact reasonable, the statute would be violated absent a calculation by the landlord to estimate its damages before it charged a late fee." *Id.* at 174.

The Fifth Circuit disagreed, holding that "regardless of whether a process is employed, if the late fee is a reasonable estimate at the time of contracting of damages that are incapable of precise calculation, then the tenant is adequately protected and there should be no liability." *Id.* at 178. The court explained that "[t]he reasonableness [of a late fee] is

---

[7] *See also Cleven*, 328 F.R.D. at 459 ("Plaintiffs assert two common questions for classwide resolution: (1) Did Defendants estimate their damages prospectively before contracting for the late fees? (2) If yes, were the late fees charged a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent . . . .").

to be judged based on what was known as well as unknowable with precision at the time of contracting." *Id.* In other words, "there would be no violation of section 92.019 if those fees were, in fact, a reasonable estimate of the uncertain damages the landlord might suffer." *Id.* Although the Fifth Circuit noted that "[t]here are many unknowable factors that might determine a landlord's damages each time a tenant fails to pay rent on time," *id.* at 177, it never held that reasonableness is an individualized inquiry. To the contrary, the court concluded that "[t]he Texas Legislature clearly did not contemplate that a landlord must re-estimate damages each time a tenant's rent is tardy before imposing a late fee." *Id.* at 178.

The parties here did not seek summary judgment on the question of whether section 92.019 requires that a landlord estimate a reasonable late fee before charging it, nor do they brief that question in this Court. We therefore assume for purposes of our analysis that the Fifth Circuit's answer to that question in *Cleven* was correct. But this class certification order does not suffer from the same deficiencies present in the *Cleven* orders. Unlike in *Cleven*, there is no underlying summary judgment on liability here suggesting the class was "certified based on a significant misunderstanding of the law" that might "[a]ffect . . . the requirements for class certification." *Gill*, 299 S.W.3d at 129 (quotation marks omitted).

Rather than explaining how the parties' legal disputes regarding the statute are relevant in "determining whether the purported class can meet the certification prerequisites," *id.* at 126, Mosaic has simply taken for granted that the disputes are "important substantive issues"

18

that "could have a significant effect on the way the claims in this case are tried." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 777 (Tex. 2005). In other words, Mosaic complains about the trial court's failure to resolve the parties' developing merits disputes regarding section 92.019's requirements, but Mosaic has not explained why doing so "is a necessary antecedent to the predominance issue," *Cleven*, 20 F.4th at 176, or any other requirement of class certification.

Mosaic did argue in the trial court that the *per se* theory of liability accepted by the district courts in *Cleven* would affect the class certification analysis. But unlike in *Cleven*, the trial court's order on class certification here did not accept the *per se* theory by excluding consideration of the reasonableness of Mosaic's late fees. To the contrary, the trial court included "Is $100/10 a reasonable estimate of damages resulting from late payment of rent?" as an "issue of law and/or fact common to the members of the class."

Discussions at the hearing on class certification also foreshadowed potential disputes about whether (1) Mosaic was required to conduct a prospective estimate of its damages; (2) a reasonable estimate of Mosaic's damages includes overhead costs like salary or only a per diem interest rate; and (3) section 92.019 regulates chargebacks of rent concessions as a type of late fee. But the parties did not develop these disputes and present their competing arguments to the trial court for resolution, whether by summary judgment or otherwise. Thus, the class certification order did not resolve the disputes, instead listing them among the issues of law common to the class. Mosaic does not address

19

how listing them as additional issues to be resolved on a class-wide basis undermines any of the requirements for class certification.

We reject Mosaic's suggestion that reversal of a certification order is warranted whenever a defendant contends there is a legal error in the plaintiff's position and the trial court treats that legal dispute as an issue suited for class-wide resolution. As discussed above, legal disputes regarding the elements of a claim or defense or whether a claim has a basis in law must be resolved prior to certification. Other legal disputes must also be resolved as necessary "to determine whether all prerequisites to certification have been met." *Bernal*, 22 S.W.3d at 435. For example, if the legal dispute bears on whether "issues of . . . fact" to be tried will be "common to the class members" or "affect[] only individual class members," TEX. R. CIV. P. 42(c)(1)(D)(ii)-(iii), its resolution is necessary to evaluate the commonality and predominance requirements for certification and to craft a proper trial plan. Legal disputes that do not fall within these categories may either be presented to the court for resolution prior to certification or listed in the certification order for later resolution, but the parties should at least develop such disputes enough that the trial court can determine whether to list them as "issues of law . . . common to the class members" or "affecting only individual class members." *Id*.

Mosaic did not argue in the trial court, and has not shown here, that any apparent legal disputes about how section 92.019 applies to Cessor's claim would affect the trial court's findings that the class claim satisfies Rule 42's commonality, typicality, or predominance requirements. There is no indication in the record that the parties'

potential disputes were misidentified as common to the class members, or that they needed to be resolved for the court to determine whether the certification requirements were met. Thus, at least with respect to Cessor's affirmative statutory claim, it does not appear that the trial court's order "neglects to consider asserted differences among class members that could prevent the suit from generating 'common answers apt to drive the resolution of the litigation.'" *Chavez*, 957 F.3d at 548 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

For example, Cessor presented evidence at the class certification hearing that the same electronic system Mosaic would use to produce a summary of any late fees imposed on class members can also produce summaries on any rent concessions that Mosaic charged back for late payment of rent. Thus, whichever side is correct about whether the statute's limits on late fees also apply to chargebacks, it appears from the record that the answer to that question will be "applicable to the class as a whole and be subject to generalized proof." *Union Pac. Res. Grp.*, 111 S.W.3d at 74; *see also Sw. Bell Tel. Co.*, 308 S.W.3d at 922 (holding elements of claim could be demonstrated class-wide because the disputed "charge is uniformly calculated and applied").[8]

---

[8] *See also Henry Schein*, 102 S.W.3d at 695 ("The question the court must decide before certifying a class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones."); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2019) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.").

By way of comparison, in *Chavez v. Plan Benefit Services*, the plaintiffs argued that "the documents governing each plan are materially indistinguishable, such that the analysis pertaining to one plan will apply to all," but the defendants asserted that "fundamental and dispositive differences among the plan documents" would "negate the possibility of a common answer" on questions central to the defendants' liability. 957 F.3d at 548. The Fifth Circuit held that, "[*f*]*aced with those warring factual contentions*, the district court needed to resolve whether there were relevant differences among the many plans—and, if so, to explain why they did not prevent classwide resolution of the common issue." *Id.* at 548-49 (emphasis added).

Unlike in *Chavez*, however, Mosaic has not identified any "warring factual contentions," *id.*, material to the trial court's ability to determine whether the reasonableness of Mosaic's late fees can "be proved class-wide with evidence generally applicable to all class members." *Henry Schein*, 102 S.W.3d at 693. Nor has Mosaic articulated (or supported) any rationale for questioning the trial court's conclusion that the only individualized inquiries will be mechanical calculations of the total late fees paid by each class member. For example, Mosaic has never contended—at any stage of this case—that the statutory reasonableness inquiry is inherently individualized or that a particular factor relevant to damages is likely to vary from tenant to tenant. *Cf. Cleven*, 20 F.4th at 178 (premising liability on whether, given "what was known as well as unknowable with precision at the time of contracting," the fee is a reasonable estimate of damages incapable of precise calculation). Absent such arguments from Mosaic, we have no

22

reason to conclude, as the Fifth Circuit did in *Cleven*, that "proper construction is a necessary antecedent to the predominance issue." *Id.* at 176.

For these reasons, we hold that the record does not show the trial court abused its discretion by failing to engage in further analysis of the merits of the class's statutory claim. But as we explain next, the trial court did abuse its discretion by failing to consider Mosaic's defenses, which requires a remand for reexamination of Rule 42's requirements in light of the applicable defenses as well.

### III. The trial court abused its discretion by failing to address Mosaic's defenses.

Finally, Mosaic argues that the trial court failed to conduct the required rigorous analysis because the class certification order did not list or analyze the elements of Mosaic's defenses. Cessor responds that the defenses were raised in a late amended answer submitted without leave of court three days before the certification hearing, and Mosaic did not bring them to the trial court's attention in connection with the motion for class certification, as our rules required it to do.[9] Yet we have held that leave to amend a pleading should be presumed in certain circumstances. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490-91 (Tex. 1988) (per curiam). And as we explain in the *Simien* opinion issued today, our rules require a trial court to address all live

---

[9] *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion . . . ."); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) (holding that complaining party must "make the trial court aware of the complaint and obtain a ruling").

defenses in connection with class certification, and the court's failure to do so is an abuse of discretion that is harmful by its nature. *See Mosaic Baybrook One, L.P. v. Simien*, __ S.W.3d __, __, slip op. at 52 (Tex. Apr. 21, 2023) (Nos. 19-0612, 21-0159). We must decide how these principles apply here.

As discussed above, "a trial court's certification order must indicate how the claims will likely be tried so that conformance with Rule 42 can be meaningfully evaluated." *Bernal*, 22 S.W.3d at 435. In particular, an order granting class certification "must state," among other things, (1) "the elements of each claim or defense asserted in the pleadings"; (2) "why the issues common to the members of the class do or do not predominate over individual issues"; and (3) "how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner." TEX. R. CIV. P. 42(c)(1)(D)(i), (vi), (viii).

To determine whether Mosaic's defenses were "asserted in the pleadings," we turn to Rule 63. The relevant part of the rule provides:

> Parties may amend their pleadings . . . at such time as not to operate as a surprise to the opposite party; provided, that any pleadings . . . offered for filing . . . after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63. As previously noted, the agreed docket control order set a deadline of June 16, 2018, for amending and supplementing pleadings without leave of court.

24

Mosaic raised affirmative defenses for the first time in an amended answer filed November 9, which was after the parties' briefing and documentary evidence regarding class certification had been submitted. The record does not reflect that Mosaic sought or obtained leave of court. Nor does it contain a motion to strike. But the trial court's certification order recites that the court has "a thorough understanding of the claims and defenses in this case" and considered "the court's file." Cessor provided a proposed draft of this order to the court after Mosaic submitted its amended answer, and the order does not specify a date on which the court reviewed its file and came to an understanding of the claims and defenses other than the date it was signed: November 21, 2018.[10]

The parties disagree about whether the late amended answer was part of "the court's file" at that time and whether these recitations indicate that the trial court considered that answer. Mosaic points out that in the summary judgment context, "[c]ourts of appeals considering whether a trial court granted leave commonly—and correctly—examine the record for an 'affirmative indication that the trial court permitted the late filing'" of a response. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) (per curiam). Cessor responds that this

---

[10] *Cf. Hinojosa Auto Body & Paint, Inc. v. Finishmaster, Inc.*, No. 03-08-00361-CV, 2008 WL 5210871, at *4 (Tex. App.—Austin Dec. 12, 2008, no pet.) (declining to consider amended pleading where trial court stated on record that nothing had been filed in case since specific date); *Guereque v. Thompson*, 953 S.W.2d 458, 464 (Tex. App.—El Paso 1997, no writ) (declining to consider amended pleading where order "explicitly states that the trial court considered only those pleadings on file seven or more days before the summary judgment hearing").

principle does not supersede the requirement of error preservation. Indeed, the late response in *B.C.* was brought to the trial court's attention by the opposing party, which challenged that response on the merits. *Id.* at 258.

In *Goswami v. Metropolitan Savings & Loan Association*, however, we explained that "the presumption which governs amended pleadings under [Rule 63] should not be confused with the presumption which governs the filing of opposing affidavits and written responses to a motion for summary judgment under [Rule 166a(c)]." 751 S.W.2d at 490 n.1. These situations differ not only in the presumptions that apply but also in the standards governing when a late filing should be allowed.

"A liberal interpretation has been given to Rule 63," such that "leave of court [to file a late pleading] is presumed" when it is "considered by the trial court" and the opposing party "has not shown surprise or prejudice." *Id.* at 490. In contrast, "when nothing appears of record to indicate that the late filing of the written [summary judgment] response was with leave of court [under Rule 166a(c)], it must be presumed that the trial court did not consider the response." *Id.* at 490 n.1. And while Rule 63 provides for the denial of leave to file an amended pleading when the opposing party objects and there is evidence of surprise or prejudice or the amendment would be prejudicial on its face, *see Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992) (per curiam), we have held that leave should be granted to file a late summary judgment response under Rules 5 and 166a(c) when the failure to respond was due to accident or mistake and permitting the late response "will occasion no undue delay or otherwise

26

injure the party seeking summary judgment." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002).

*Goswami* illustrates how Rule 63 applies to facts somewhat similar to those here. The plaintiff in that case filed a late amended petition four days before a hearing on the defendant's motion for summary judgment. *Goswami*, 751 S.W.2d at 490. The record did "not reflect whether leave to file [the petition] was requested or granted," and it "contain[ed] [no] motion to strike" and no "indication that the court refused leave to file." *Id.*

We recognized that "[i]n the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading." *Id.* Applying this principle, we noted that the amended petition was "part of the record that was before the trial court" and its judgment recited that "all pleadings on file were considered." *Id.* Thus, because the "record [was] silent of any basis to conclude that the amended petition was not considered by the trial court" and the defendant "has not shown surprise or prejudice, leave of court is presumed" and the amended petition "was properly before the trial court." *Id.* at 490-91.

In this case, the parties do not focus on the requirements of Rule 63. And in particular, they do not address whether Mosaic's amendment would be prejudicial on its face or whether there is evidence of surprise or prejudice to Cessor. *See Chapin & Chapin*, 844 S.W.2d at 665. We have recognized, however, that Rule 63 places the burden on the party opposing the amendment to show those matters by raising an

objection in the trial court.  *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994); *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990).  If the opposing party objects and the trial court refuses the amendment, it then becomes the burden of the party offering the amendment to show an abuse of discretion.  *See Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980).

Because Cessor has not raised an objection to Mosaic's late amended answer in the trial court, that court "ha[d] no discretion to refuse" to consider the defenses therein when it ruled on the motion for class certification.  *Greenhalgh*, 787 S.W.2d at 939.  Both parties had a responsibility to assist the court in this task by bringing the defenses to its attention at the class certification hearing and framing their disputes about how the certification requirements apply to those defenses.  But under our precedent applying Rule 63, Cessor's failure to object to Mosaic's late amended answer means that the defenses were part of the pleadings for purposes of the Rule 42 certification analysis.[11]  And by opposing class certification, Mosaic made the trial court aware of the need to address those defenses if it certified a class.  *Simien*, __ S.W.3d at __, slip op. at 52; *see* TEX. R. APP. P. 33.1.

As we recognize today in *Berry*, "correctly identifying the elements of the claim[s]" and defenses "is an essential, foundational step in the class certification process, which cannot be put off until after certification."  __ S.W.3d at __, slip op. at 11.  And as we explain in

---

[11] Because Rule 63 requires consideration of Mosaic's late-filed defenses in this case, we do not address whether Rule 42's requirement of complete consideration of claims and defenses—as articulated in this case and in *Berry*—would also require the trial court to consider those defenses.

*Simien*, "Rule 42(c)(1)(D) requires a trial court . . . to address [each] defense in its certification order and explain how it will be tried." __ S.W.3d at __, slip op. at 53. The trial court abused its discretion by failing to do so.

Cessor argues that this error was harmless because Mosaic's defenses apply in the same way to every class member. But "it is not for a reviewing court to guess whether the trial court would still have exercised its discretion to certify a class had its understanding [of the defenses] been correct." *Id.* at __, slip op. at 52. "We express no opinion on the proper outcome of a rigorous Rule 42 analysis, but we do require the trial court to conduct it." *Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 82 (Tex. 2013).

## CONCLUSION

The court of appeals' judgment is reversed, the trial court's order certifying a class under Rule 42 is reversed, and the case is remanded to the trial court for further proceedings.

J. Brett Busby
Justice

**OPINION DELIVERED:** April 21, 2023