# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00275-CV

---

**Progressive County Mutual Insurance Company, Appellant**

**v.**

**Brian Koetter and Elyssa Parven, Individually, and on behalf of themselves and for all others similarly situated, Appellees**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-18-005132, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellees Brian Koetter and Elyssa Parven, individually, and on behalf of themselves and all others similarly situated, sued Progressive County Mutual Insurance Company. Appellees allege that Progressive failed to timely handle claims for personal injury protection (PIP) benefits[1] within the statutory deadlines of the Texas Prompt Payment of Claims Act (the Act) and Texas Insurance Code Section 1952.156 (the PIP Statute). *See* Tex. Ins. Code §§ 542.056, 542.058, 1952.156. The trial court certified two classes, a "15-Day Class," alleging violations of Texas Insurance Code Section 542.056, and a "30-Day Class," alleging violations of Texas Insurance

---

[1] Personal injury protection (PIP) coverage "is a form of no-fault insurance" limited to medical expenses and lost wages. *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 268–69 (Tex. 1999); *see* Tex. Ins. Code §§ 1952.151, .155.

Code Sections 542.058 and 1952.156.  Progressive appeals from this certification order.  We reverse and remand.

## BACKGROUND

Before delving into the background facts, we provide a brief overview of the statutes and procedural rules for class actions that are relevant to this appeal.

### Applicable Insurance and Class-Action Procedures

The trial court certified the classes based upon appellees' allegations that Progressive failed to accept and pay class members' PIP claims pursuant to the statutory deadlines within the Act and the PIP Statute.  The Act, codified in Chapter 542 of the Texas Insurance Code, imposes procedural requirements and deadlines on insurers to promote the prompt payment of insurance claims.  *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019), *superseded by statute on other grounds as stated in*, *Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 794 (Tex. 2024)[2]; *see also* Tex. Ins. Code § 542.054 (instructing that Act "shall be liberally construed to promote the prompt payment of insurance claims").  Although the Act's purpose relates to prompt payment of claims, it also contains requirements and deadlines for responding to, investigating, and evaluating insurance claims.  *Barbara Techs. Corp.*, 589 S.W.3d at 812 (citing Tex. Ins. Code §§ 542.055–.056).  "Both the payment deadlines and the non-payment

---

[2] In *Rodriguez v. Safeco Ins. Co. of Indiana*, the Texas Supreme Court answered a certified question from the United States Court of Appeals for the Fifth Circuit concerning a recent amendment to the Act, Chapter 542A, which governs the amount of attorney's fees and interest available for weather-related insurance disputes.  684 S.W.3d 789, 790 (Tex. 2024); *see* Tex. Ins. Code § 542A.001(2)(C).  The Texas Supreme Court concluded that Section 542A.007 prohibits an award of attorney's fees when an insurer has fully discharged its obligations under the policy by voluntarily paying the appraised amount, plus any statutory interest, in compliance with the policy's appraisal provisions.  *Rodriguez*, 684 S.W.3d at 792.

deadlines and requirements are enforceable under the [Act], and damages can be imposed for any violation." *Id.* (citing Tex. Ins. Code §§ 542.058, .060). The following statutory requirements form the basis of the class claims:

- Not later than fifteen days after the insurer receives notice of a claim, it must (i) acknowledge receipt of the claim, (ii) commence investigation of the claim, and (iii) "request from the claimant all items, statements, and forms the insurer reasonably believes, at that time, will be required from the claimant." *Id.* at 812–13 (quoting Tex. Ins. Code § 542.055(a)).

- Within fifteen business days of receiving "all items, statements, and forms required by the insurer to secure final proof of loss," the insurer must give the claimant written notice accepting or rejecting the claim. *Id.* (quoting Tex. Ins. Code § 542.056(a)).[3]

- If the insurer notifies a claimant that it will pay all or part of a claim, it must pay it by the fifth business day after the date of the notice of acceptance. *Id.* (citing Tex. Ins. Code § 542.057(a)).

Sections 542.055, 542.056, and 542.057 impose no deadlines or payment obligations on an insurer that rejects a claim. *Id.*

> The Act also provides that an insurer must pay statutory interest and attorney's fees:
>
> if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

Tex. Ins. Code § 542.058(a); *see id.* § 542.060(a) (providing that if insurer "is liable for a claim under an insurance policy" and "is not in compliance with" the Act, insurer is liable for amount of

---

[3] If the insurer is unable to accept or reject the claim within the fifteen-business-day deadline, it must notify the claimant within that same deadline of why it needs additional time and must accept or reject the claim within forty-five days after sending that notice. Tex. Ins. Code § 542.056(d).

3

claim, interest on amount of claim, and reasonable and necessary attorney's fees). The parties dispute whether the PIP Statute should be considered an "other applicable statute" referenced in Section 542.058(a) that specifies a different deadline for PIP claims. *See* Tex. Ins. Code §§ 542.058(a), 1952.156; *see also Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 268 (Tex. 1999) ("PIP's limitation to medical expenses and lost wages, along with its collateral-source and no-fault features, are designed to simplify and hasten claim resolution and payment."). An insurer shall pay PIP benefits "periodically as claims for those benefits arise, but not later than the 30th day after the date the insurer receives satisfactory proof of a claim." Tex. Ins. Code § 1952.156(a). If the insurer pays PIP benefits past the statutory deadline, the person entitled to the benefits is entitled to recover a statutory penalty, interest, and reasonable attorney's fees. *Id.* § 1952.157(b); *State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901, 907 (Tex. App.—Texarkana 2022, pet. denied).

All class actions must satisfy the four threshold requirements set forth in Texas Rule of Civil Procedure 42(a): (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequate representation ("the representative parties will fairly and adequately protect the interests of the class"). *Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 617 (Tex. 2023) (quoting *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 438 (Tex. 2007)). Class actions must also satisfy at least one of the subdivisions of Rule 42(b). *See id.* Because appellees rely on Rule 42(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a

class action is superior to other available methods for the fair and efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(3).

"We review a class certification order for abuse of discretion." *USAA Cas. Ins. Co. v. Letot*, 690 S.W.3d 274, 283 (Tex. 2024) (quoting *Cessor*, 668 S.W.3d at 617). Compliance with Rule 42 must be demonstrated and cannot merely be presumed. *Id.* (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). "This Court's precedent emphasizes repeatedly that judicial analysis of whether a claim satisfies Rule 42 must be 'meaningful' and 'rigorous.'" *Id.* (quoting *American Campus Cmtys., Inc. v. Berry*, 667 S.W.3d 277, 283 (Tex. 2023)).

## Factual Background

Progressive is an automobile insurance carrier that does business in Travis County, Texas. Koetter and Parven are both insured under a contract with Progressive. Koetter and Parven were injured in unrelated automobile accidents, and both received PIP benefits following their respective car accidents.

Appellees allege that Progressive violated the statutory deadlines of the Act and the PIP Statute when Progressive handled their claims for PIP benefits. Appellees contend that after Progressive receives all necessary documents, it must do two things: (1) notify a claimant in writing of the acceptance or rejection of a PIP claim within fifteen business days, pursuant to Texas Insurance Code Section 542.056, and (2) issue payment within thirty days, pursuant to Section 542.058 and the PIP Statute. According to appellees, Progressive is liable under the Act if it paid any portion of the PIP claim outside of its deadline, because by paying the claim, Progressive conceded its liability on the claim and obligation to meet the Act's deadlines. *See Barbara Techs. Corp.*, 589 S.W.3d at 819. Appellees contend that Progressive's failure to meet these deadlines

automatically entitles its insureds to statutory penalties and attorney's fees and that Progressive's liability is undisputed for paid PIP claims when additional information was never requested—the only type of claim included in this lawsuit.

Koetter's three PIP claims

Appellees allege that Progressive failed to timely pay three PIP claims that Koetter submitted. Progressive allegedly received Koetter's first PIP claim on May 14, 2018, for medical services costing $7,635.00. Appellees assert that Progressive issued a decision on the PIP claim on June 26, 2018, which is reflected in an explanation of benefits (EOB) that Progressive purportedly automatically generated and shows that Progressive paid $5,191.80 of the amount submitted. Appellees contend that this demonstrates that Progressive failed to accept in writing Koetter's May 14, 2018 PIP claim within Section 542.056's fifteen-day deadline and that Progressive never requested additional information in support of the amount paid on the claim. Appellees also assert that this demonstrates that Progressive missed Section 542.058 and the PIP Statute's thirty-day payment deadline for insurers to pay a PIP claim.

Progressive allegedly received Koetter's second PIP claim on June 25, 2018, for medical services costing $660.00. Appellees contend that Progressive issued a payment decision on July 19, 2018, which is reflected in an EOB showing that Progressive paid $86.92 of the amount submitted. Appellees assert that Progressive failed to accept in writing the June 25, 2018 PIP claim within the Section 542.056 fifteen-day deadline and that Progressive never requested additional information in support of the amount paid on the claim.

Progressive allegedly received Koetter's third PIP claim on July 25, 2018, for medical services costing $4,705.00. Appellees contend that Progressive issued its decision on the

6

PIP claim on August 27, 2018, which is reflected on an EOB showing that Progressive paid $440.00 of the amount submitted. Appellees assert that Progressive never requested additional information in support of the amount paid on the claim. For this reason, appellees assert that Progressive violated the fifteen-day deadline to notify a claimant of acceptance of a claim and the thirty-day deadline to pay a PIP claim.

Parven's two PIP claims

Appellees allege that Progressive failed to timely pay two PIP claims that Parven submitted. Progressive received Parven's first PIP claim on March 20, 2018, for medical services costing $427.00. Appellees contend that Progressive issued its payment decision on April 12, 2018, which is reflected on an EOB showing that Progressive paid $298.23 of the amount submitted. Appellees assert that Progressive failed to accept in writing the March 20, 2018 PIP claim within the Section 542.056 fifteen-day deadline and Progressive never requested additional documentation in support of the amount paid on the claim.

Progressive allegedly received Parven's second PIP claim on March 20, 2018, for medical services costing $4,530.00. Appellees contend that Progressive issued its payment decision on April 20, 2018, which is reflected in an EOB showing that Progressive paid $1,344.92 of the amount originally submitted. Appellees contend that Progressive failed to accept in writing the March 20, 2018 PIP claim within the fifteen-day deadline and that Progressive never requested additional information in support of the amount paid on the claim. Therefore, appellees allege that Progressive missed the Section 542.058 and the PIP Statute's thirty-day deadline for insurers to pay a PIP claim.

Appellees sought damages on behalf of themselves and those similarly situated and requested that the trial court certify the lawsuit as a class action. In their motion for class certification, appellees argued that because the proposed classes were narrowly tailored to include only paid PIP claims, Progressive conceded its obligation to meet the Act's deadlines by paying the claims. And appellees asserted that the proposed class members suffered common injuries caused by Progressive's failure to comply with the Act's deadlines.

Progressive filed an opposition to class certification that raised many of the same issues raised in this appeal. Progressive asserted that a medical bill submitted for reimbursement was not a PIP claim for the purposes of the Act because the Act defines a "claim" to be a request for a specific type of coverage, such as liability or PIP coverage. Progressive also asserted that the claims were not suitable for class-wide adjudication because individual issues predominated over common questions. Progressive maintained that "whether the class members are owed remedies under Section 542.060" required individual inquiries into each claim. These inquiries include (1) how much interest Progressive owes; (2) who is entitled to receive the interest payment (if the insured assigned the claim); and (3) if the medical provider waived the interest payment, if the claim was assigned.

Progressive's PIP Procedures

Progressive explained that it processes a PIP claim using the following procedures.[4] A Progressive representative receives notice of a PIP claim from an insured and makes a coverage

---

[4] We derive these facts from the record that was before the trial court at the time of the certification hearing. The record includes Progressive's responses to appellees' interrogatories and requests for admission and the deposition testimony of Progressive's corporate representative, Keith Benefiel. Benefiel testified that he serves as director for claims process for medical at

8

determination. If Progressive determines that PIP coverage exists under the insured's policy, Progressive will notify the insured of the PIP policy limits. A third-party company enters the medical bills into a computer system for PIP claims submitted under Texas policies issued by Progressive.

If Progressive has the necessary information to make a reimbursement decision on a PIP claim, Progressive will issue payment, or partial payment, along with an EOB. Progressive sends out an EOB after it has reviewed a medical bill and made a payment determination concerning the bill. An EOB is generated through Progressive's automated payments systems. The EOB contains explanation codes to help explain the payment decision noted on a particular line of a bill.

If Progressive does not immediately issue payment on a medical bill because Progressive concludes that it needs additional information to determine whether charges on the bill are reasonable and necessary, then it will issue an EOB with a "Code 303," explaining that additional information is required to make a reimbursement decision. Progressive's corporate representative, Keith Benefiel, testified by deposition that "if we need something we request it in our explanation of benefits response." Benefiel testified that when Progressive processes a PIP claim, "if additional information is requested, it will be contained on the EOB." Benefiel further testified that "our process is when we receive a bill, we respond with either a payment, a partial payment, or a denial. And in the partial payment or denial if we need additional information we will request it." The first time that a claimant would receive payment, partial payment, or a Code 303 requesting additional information to make a reimbursement decision is on an EOB.

Progressive Casualty Insurance Company, and that Progressive—the defendant in this lawsuit—is a subsidiary of Progressive Casualty Insurance Company.

Benefiel testified that Progressive's computer system automatically flags any bill that has been in the system for longer than thirty days to determine if statutory interest is due. Progressive's system documents the date when Progressive received the PIP claim so that the system can track the number of days the claim has been pending.

The "Bill Payable Date" is the date when Progressive received the information necessary to process payment on a claim. Progressive considers the "Bill Payable Date" as the event that starts the clock for its system to flag violations of the thirty-day payment deadline under the PIP Statute. When the first EOB reflects payment to a claimant (because Progressive received the information it needed to process the claim and additional information is not requested), the date when Progressive originally received the PIP claim is called the "Bill Payable Date."

The EOB shows the date when Progressive received the PIP claim and the date when Progressive paid the PIP claim. The "Document Date" is generated when the EOB is generated, which is also the date when the EOB and draft were printed and put into the mailing process.

Once an EOB reflects that payment is being made, Progressive's computer system alerts Progressive if more than thirty days expire between the date it received a PIP claim and the date Progressive commits the bill (i.e., pays the PIP claim). At that point, Progressive determines whether it will add interest to the bill. If no request for additional information was made, then Progressive calculates interest pursuant to the PIP Statute and adds that interest to the benefits payment.

Progressive's software uses an Interest Calculator to calculate the statutory interest owed after a 30-day violation. For Texas claims, Progressive personnel must input three factors into the Interest Calculator: (1) the Bill Payable Date (i.e., "Document Date" or received date of

10

the PIP claim); (2) the Actual Paid Date; and (3) the Payment Amount.[5]  The remaining sections of the Interest Calculator automatically populate after the three input factors are selected.

When interest is calculated and paid, Progressive's current system automatically puts a Code 85 or a Code I9999 on the EOB to reflect that an interest payment is being made in connection with payment of the associated medical bill.  A Code 85 or Code I9999 are synonymous codes used on an EOB to explain to a recipient that Progressive issued an interest payment because Progressive exceeded the 30-day period under the PIP statute.

In response to a discovery request, Progressive produced a spreadsheet that compiles information on every Texas-based PIP claim it had processed since 2016.  The spreadsheet shows specific line items that are on an EOB.  For each line item, the spreadsheet identifies the PIP claim number that is associated with each insured.  Progressive's spreadsheet contains (1) the payment amount on the EOB's line item; (2) the Bill Payable Date (i.e., the receive date) for that line item; and (3) the Document Date when the first EOB was sent to the insured. Therefore, the spreadsheet shows the difference in days between the date when Progressive first received the bill and when the first EOB reflected payment of the line item of the bill.

**The class certification**

Following a hearing, the trial court granted appellees' motion for class certification. The certification order defines two classes:

**Tex. Ins. Code § 542.056 Class ("15-Day Class")**

All Progressive-PIP claimants with a Texas-based policy that satisfy the following:

---

[5]  Appellees contend that these are the three elements of a 30-day violation.

11

(1) received an amount allowed exceeding $0.00 on a line item within the original EOB;

(2) the line item's "EOB_Print" date is more than 15 business days from its "Bill_Rcv_Dt" (i.e., bill receive date);

(3) Progressive failed to issue a Code 85/I9999 (i.e., interest payment); and

(4) the line item's "EOB_Print" date is from August 30, 2016 to the date of certification.[6]

### Tex. Ins. Code §§ 542.058 & 1952.156 Class ("30-Day Class")

All Progressive-PIP claimants with a Texas-based policy that satisfy the following:

(1) received an amount allowed exceeding $0.00 on a line item within the original EOB;

(2) the line item's original "EOB_Print" date is more than 30 days from its "Bill_Rcv_Dt" (i.e., bill receive date);

(3) Progressive failed to issue a Code 85/I9999 (i.e., interest payment); and

(4) the line item's original "EOB_Print" date is from August 30, 2016 to the date of certification.

The certification order defines the elements of a violation of Section 542.056 (the 15-Day Class) as requiring appellees to show that Progressive (1) is liable for PIP benefits and (2) failed to accept the PIP claim in writing by the fifteenth business day after Progressive received satisfactory proof of a PIP claim. *See* Tex. R. Civ. P. 42(c)(1)(D)(i). The certification order defines the elements of a violation of the PIP Statute and of Section 542.058 (the 30-Day Class) as requiring appellees to show that Progressive (1) is liable for PIP benefits and (2) failed to pay benefits by the thirtieth day after Progressive received satisfactory proof of a PIP claim. *See id.*

---

[6] The trial court excluded from the classes "all present or former officers and/or directors of Progressive, Class Counsel and their resident relatives, [the trial court] and any resident relatives, and Progressive's counsel of record and their resident relatives."

12

The certification order recites that the following issues are common to the 15-Day Class:

1. Whether Progressive received PIP claims from the class members;

2. Whether Progressive's first response to the class members' PIP claims was to accept the PIP claim by paying any amount of the PIP claim (i.e., paying without ever asking for additional information);

3. Whether Progressive is liable for the PIP benefits that were paid to the class members;

4. Regarding paid amounts on the class members' PIP claims, whether Progressive failed to accept the PIP claim in writing by the fifteenth business day after Progressive received satisfactory proof of the PIP claims;

5. Whether class members are owed 18% interest on the paid amount;

6. Whether Texas law prevents insureds, like the class members, from legally assigning their statutory remedies with an assignment of benefits; and

7. Whether Texas Insurance Code Section 542.056 applies to Progressive's handling of bills or opening of PIP coverage.

It recites that the following issues are common to the 30-Day Class:

1. Whether Progressive received PIP claims from the class members;

2. Whether Progressive's first response to the class members' PIP claims was to pay any amount of the PIP claims (i.e., paying without ever asking for additional information);

3. Whether Progressive is liable for the PIP benefits that were paid to the class members;

4. Regarding paid amounts on the class members' PIP claims, whether Progressive failed to pay those benefits by the thirtieth day after Progressive received satisfactory proof of the PIP claims;

5. Whether class members are owed 18% interest on the paid amount;

6. Whether class members are owed 12% penalty on the paid amount;

13

7. Whether the class members' remedies under Texas Insurance Code Sections 1952.157 and 542.060 are cumulative under Texas Insurance Code Section 542.061.

8. Whether Texas law prevents insureds, like the class members, from legally assigning their statutory remedies with an assignment of benefits.

The certification order also recites that Progressive disputes appellees' legal application of Texas Insurance Code Section 542.056 to PIP Claims, and that the issue "is a legal interpretation that can be resolved class-wide." The certification order states that common issues predominate because all class members allegedly experienced the untimely handling of their paid PIP claims when additional documentation was not requested. *See* Tex. R. Civ. P. 42(b)(3). For this reason, the trial court rejected Progressive's argument that every issue in the lawsuit would require individualized inquiries to determine if Progressive received satisfactory proof of the PIP claims. The certification order states that the only non-common issue affecting individual class members is determining the exact amount of interest and statutory penalty owed to each class member. *See* Tex. R. Civ. P. 42(c)(1)(D)(iii). Progressive took this interlocutory appeal from the trial court's certification order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3).

**DISCUSSION**

Progressive brings two issues challenging the certification order, each with sub-issues. In its first issue, which has three sub-issues, Progressive argues that the certification order should be vacated because the trial court did not address disputes about the substantive law governing appellees' claims that affect the requirements for class certification. In its second issue, Progressive argues that the certification order should be vacated because the trial court failed to conduct the rigorous analysis required by Rule 42 before it certified the classes.

14

## I. Trial court certified classes that are fundamentally flawed

### A. Sub-Issue One: 15-Day Class claims are legally baseless

Progressive first contends that the 15-Day Class claims are legally baseless because the trial court certified the class based on a significant misunderstanding of the law concerning the definition of a "claim" under the Act. According to Progressive, the Act defines a "claim" as a request for a specific type of coverage under a policy, such as liability or PIP coverage. Therefore, a medical bill submitted for PIP coverage could not be a claim under Section 542.056, and issuing payment for a medical bill could not evidence when Progressive "accepted" a claim.

The certification order reflects that Progressive disagreed with appellees about the applicability of the PIP statute to the Act. The certification order indicates, however, that the trial court viewed the legal question of whether Section 542.056 applies to Progressive's handling of PIP claims not as a predicate question essential to a Rule 42 analysis, but instead as a question of law or fact common to the class. *See Berry*, 667 S.W.3d at 283 (citing Tex. R. Civ. P. 42(a)). Thus, unresolved questions concerning whether Section 542.056 applies to PIP claims and whether a medical bill constitutes a claim under Section 542.056 became a reason to grant class certification so that the common legal questions could be resolved uniformly. *See id.* The Texas Supreme Court has rejected this "certify now and worry later" approach to class certification. *Id.* (citing *Southwestern Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000)).

The Texas Supreme Court has held that an appellate court reviewing a certification order must consider properly raised challenges to the trial court's understanding of the substantive law governing the plaintiff's claim. *Id.* at 282. "Although the required analysis of the governing law at the class-certification stage is far less searching than a trial on the merits," evaluating whether a claim is suitable for class certification requires some coherent understanding of the law

15

governing the claim. *Id.* at 282–83 (cleaned up). When a trial court certifies a legally baseless claim, we must reverse. *Id.* at 287–88 (reversing certification order and remanding to trial court because proposed class claims had no basis in law). We review de novo the issue of whether a claim is legally baseless. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699–700 (Tex. 1994) (appellate court reviews de novo whether pleading states legally baseless claim in context of suit in which trial court granted summary judgment).

The Act states that a "claim" "means a first-party claim that: (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contact; and (B) must be paid by the insurer directly to the insured or beneficiary." Tex. Ins. Code § 542.051(2). It further provides that "if an insurer notifies a claimant under Section 542.056 that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made." *Id.* § 542.057(a). Because Sections 542.051 and 542.057 do not state that an insured must identify the type of coverage for which it seeks payment, and instead state that a "claim" must be paid, a claim under the Act is not, as Progressive asserts, a request for a specific type of coverage under a policy. *See id.* §§ 542.051(2), .057(a).

The language used in Progressive's Texas Auto Policy also states that a claim includes a request for payment. Progressive agrees to "notify you in writing whether the claim will be paid or has been denied, or whether more information is needed" within 15 business days. The Texas Supreme Court recognized that "the [Act]'s purpose relates specifically to prompt *payment* of claims . . . ." *Barbara Techs. Corp.*, 589 S.W.3d at 812; *see also* Tex. Ins. Code § 542.054 (explaining subchapter shall be liberally construed to promote prompt payment of insurance claims). Furthermore, the Act imposes a series of claims-handling deadlines on insurers,

Sections 542.055 through 542.058, and "enforces those deadlines by requiring insurers who fail to comply with them (and who ultimately are liable on the claim) to pay statutory interest." *Barbara Techs. Corp.*, 589 S.W.3d at 824. If the fifteen-day deadline under Section 542.056 applied only to a request for a specific type of coverage, as Progressive argues, then insureds could not receive statutory interest under the Act because a claim would have no monetary value. *See* Tex. Ins. Code § 542.060(a) (insurer not in compliance with Act is liable to pay "in addition to the amount of claim, interest on amount of the claim at the rate of 18 percent a year as damages").

Section 542.056 provides that an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the fifteenth day after the date the insurer receives all information required by the insurer to secure final proof of loss. *Id.* § 542.056. Tracking that statute, the certification order states that the elements of the class claims include that (1) Progressive is liable for the PIP benefits and (2) Progressive failed to accept the PIP claim in writing by the fifteenth day after it received satisfactory proof of the PIP claim. Progressive does not dispute that the certification order correctly recites the statutory elements of Section 542.056. The 15-Day Class is limited to situations when Progressive's first and only response to the PIP claim was to pay the claim—and not to request additional documentation by issuing a Code 303. Progressive agrees that "the fact that an insured received payment demonstrates that Progressive accepted the claim." *See id.* § 542.056(a); *Barbara Techs. Corp.*, 589 S.W.3d at 843 (Boyd, J. concurring in part and dissenting in part) ("by voluntarily and unconditionally paying the claim, the insurer 'accepts' the claim and thus concedes its liability for the benefits under the policy"). We conclude that the trial court did not certify a legally baseless claim. We overrule Progressive's first sub-issue.

17

## B. Sub-Issue Two: Legal disputes regarding elements of the 15-Day Class claims

Progressive next argues that the trial court failed to perform the rigorous analysis required under Rule 42 when it certified the 15-Day Class because the certification order did not evaluate the "claims, defenses, relevant facts, and applicable substantive law." *Bernal*, 22 S.W.3d at 435. The certification order recites that Progressive "disputes Plaintiff's legal application" of the statutes, but did not resolve the issue. Progressive contends that the trial court did not assess whether appellees' claims were provable by common evidence.[7]

Rule 42 requires that every certification order must state, among other items, (1) "the elements of each claim or defense asserted in the pleadings"; (2) "why the issues common to the members of the class do or do not predominate over individual issues"; and (3) "how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner." Tex. R. Civ. P. 42(c)(1)(D)(i), (vi), (viii); *see Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 263 (Tex. 2023) (referring to this portion of certification order as trial plan). For this reason, a trial court must resolve legal disputes regarding the elements of a claim or defense or whether a claim has a basis in law prior to certification. *Cessor*, 668 S.W.3d at 622. If a legal dispute bears on whether issues of fact to be tried will be common to class members, its resolution is necessary to evaluate the commonality and predominance requirements under Rule 42. *Id*. The court is not permitted

---

[7] Progressive asserts that each file must be individually reviewed to determine (i) when Progressive received sufficient information to make its coverage determination, (ii) when Progressive notified the insured that it would provide coverage for the claim, and (iii) whether Progressive informed the insured that it needed more time to make a coverage determination under Section 542.056(d). *See* Tex. Ins. Code § 542.056(d) (providing insurance company additional forty-five days to make a coverage decision if it notifies claimant of reasons why it needs additional time).

18

to adopt a "certify now and worry later" approach to certification. *Berry*, 667 S.W.3d at 283. We review Progressive's argument that the trial court erred in failing to adequately address its claims and defenses in the certification order for an abuse of discretion. *See Cessor*, 668 S.W.3d at 624–27.

The certification order states that an issue of law or fact common to the 15-Day Class is "[w]hether Tex. Ins. Code § 542.056 applies to Defendant's handling of bills or opening of PIP coverage." *See* Tex. R. Civ. P. 42(c)(1)(D)(ii). The certification order also recites that "Defendant has already made clear that it disputes Plaintiffs' legal application of Tex. Ins. Code § 542.056 to PIP claims, which is a legal interpretation that can be resolved class-wide." *See* Tex. R. Civ. P. 42(c)(1)(D)(iv) (requiring certification order to state issues that will be "the object of most of the efforts of litigants and court"). The trial court's failure to address legal disputes regarding the elements of appellees' claims is an abuse of discretion which requires a remand. *Cessor*, 668 S.W.3d at 622, 624 ("legal disputes regarding the elements of a claim or defense or whether a claim has a basis in law must be resolved prior to certification"). It is not for a reviewing court to guess whether the trial court would have exercised its discretion to certify a class had its understanding been correct. *Simien*, 674 S.W.3d at 262–63 (citing *Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 80 (Tex. 2013)). "We express no opinion on the proper outcome of a rigorous Rule 42 analysis, but we do require that the trial court conduct it." *Yarbrough*, 405 S.W.3d at 82. Thus, we sustain Progressive's second sub-issue. *See Cessor*, 668 S.W. 3d at 622, 624.

## C. Sub-Issue Three: 30-Day Class claims misapprehend applicable law

Addressing the 30-Day Class, Progressive argues that the trial court failed to conduct a rigorous analysis concerning what it means for an insurance company to receive

"satisfactory proof of a claim" such that the thirty-day deadline in the PIP statute begins to run. The PIP statute requires Progressive to pay PIP benefits "periodically as claims for those benefits arise, but not later than the 30th day after the date the insurer receives satisfactory proof of a claim." Tex. Ins. Code § 1952.156(a). Progressive asserts that limiting the 30-Day Class to claims where Progressive received a medical bill and never requested additional information does not demonstrate that it received satisfactory proof of the claim. According to Progressive, receiving a medical bill does not constitute "satisfactory proof of a claim" because Progressive must verify that the charges in the bill can be reimbursed for the amount submitted. *See id.* § 1952.151 (explaining that PIP protection provides payment of reasonable expenses incurred for necessary medical services arising from accident). Therefore, Progressive contends, the trial court abused its discretion by finding commonality because identifying whether Progressive requested additional information after receiving a medical bill requires individual inquiries into each file.

To comply with Rule 42, a trial court must resolve legal disputes that bear on whether issues of fact to be tried will be common to the class members or will affect only individual members. *Cessor,* 668 S.W.3d at 622 (citing Tex. R. Civ. P. 42(c)(1)(D)(ii)–(iii)). Progressive does not dispute the legal definition of "satisfactory proof of a claim" under the statute, but instead argues that the element requires individual factual inquiries into each file. The trial court narrowed the 30-Day Class to include only situations where Progressive made PIP-claim payments on the first EOB—defined as insureds that "received an amount allowed exceeding $0.00 on a line item within the original EOB."[8] This narrowed definition means that Progressive's first response to a class member's PIP claim was to pay some or all of the claim. Benefiel testified by deposition that

---

[8] The certified classes do not include any unpaid portions of PIP claims.

20

the date when a bill becomes payable is either the receipt date of the original invoice or the date when Progressive may have received additional documents. Because the class does not include instances when Progressive issued a Code 303 (i.e., requested additional information), the trial court certified the class to include only situations where the Bill Payable Date was the receipt date of the original invoice.

In the certification order, the trial court rejected Progressive's argument. The trial court determined that because appellees' causes of action "(1) concern the timing procedures applied to class members' PIP claims as a whole; and (2) are limited only to paid PIP claims not involving requests for additional documentation, the elements can be resolved without the individualized inquiries [Progressive] imagines." (Emphasis in original.) The trial court also concluded that Progressive's argument "mischaracterizes Plaintiffs' complaint and classes, which are limited only to *paid* PIP claims that never involved requests for additional information." (Emphasis in original.)

Without citing the appellate record and instead citing to "common sense," Progressive asserts that an insured or medical provider may send a medical bill to Progressive and then several days later send medical records supporting the bill. *See* Tex. R. App. P. 38.1(i) (explaining that appellant's brief must contain clear and concise argument for contentions made with appropriate citations to authorities and to record). Progressive also cites "claim notes" for Koetter, but Progressive does not argue that an entry on the claim notes demonstrates that the trial court erred in certifying the 30-Day Class.

Progressive has not shown that a dispute about how "satisfactory proof of a claim" applies to the 30-Day Class affects the trial court's finding that the class claim satisfies the requirements of Rule 42. Concerning this issue of individual factual inquiries, because the trial

21

court narrowed the class definition to include only situations where Progressive made PIP-claim payments on the first EOB, "it does not appear that the trial court's order neglects to consider asserted differences among class members that could prevent the suit from generating common answers apt to drive the resolution of the litigation." *Cessor*, 668 S.W.3d at 623 (cleaned up). We overrule Progressive's third sub-issue.

## II. Certification order does not explain how common issues predominate

In its second issue, Progressive argues that the certification order fails to (i) explain how common issues predominate over individual issues; (ii) identify common issues that drive the litigation; and (iii) address typicality, adequacy, or superiority. Because we conclude that the trial court abused its discretion in concluding that appellees carried their burden to show that the proposed classes can satisfy Rule 42's predominance requirement, we decline to determine the remainder of Progressive's sub-issues. *See* Tex. R. App. P. 47.1.

Progressive argues that the trial court failed to conduct the meaningful and rigorous analysis required under Rule 42(b)(3) because the certification order does not explain how common issues predominate over individual issues. Under the predominance requirement, "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only induvial members." Tex. R. Civ. P. 42(b)(3). The predominance requirement is "one of the most stringent prerequisites to class certification" and is "far more demanding than the commonality requirement." *Bernal*, 22 S.W.3d at 433–34; *see also Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007) ("Because predominance is one of the most stringent prerequisites to class-action certification, it is considered first in our review and must be rigorously applied."). "The test for predominance is not whether common

issues outnumber uncommon issues, but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Bernal*, 22 S.W.3d at 434 (cleaned up). Rule 42(b)(3) does not require Progressive to establish that individual issues would predominate— it requires appellees to establish the opposite. *Letot*, 690 S.W.3d at 285.

The certification order provides a two-sentence explanation as to why predominance is satisfied:

> As discussed above, the main thrust of Plaintiffs' suit concerns issues common to the class members because all class members allegedly experienced the untimely handling of their *paid* PIP claims when additional documentation was never requested. Since most of Plaintiffs' legal theories hinge on Progressive's timing procedures that apply to the class members as a whole, common issues do predominate. (Emphasis in original.)

The certification order further recites that "the only issue affecting individual class members is determining the exact amount of interest and penalty owed to each class member." The trial court concluded that this individual issue of the exact amount of payments owed to class members would arise if Progressive was found liable in the litigation. The certification order states that, "based on the record, [Progressive] possesses the information needed . . . to determine the amount of interest and penalty owed to each class member."

The trial court defined each class to exclude claims where Progressive already paid interest to the insured. Progressive contends that the trial court failed to analyze whether this class characteristic (excluding claims where interest has been paid) is capable of generalized proof— and asserts that it is not. Progressive also argues that whether it paid interest to an insured before 2019 (which is three years into the class period) requires an individual file review because Progressive did not automate interest payments in its computer system and apply Code 85 or I9999 to EOBs until 2019. Benefiel testified by deposition that Progressive did not add the Code

23

85/I9999 functionality to its computer system until 2019. During his deposition, Benefiel was asked:

> Q: So the I9999 that we were talking about earlier, did that go into effect after this 2019 change?
>
> A: Yes. That functionality is—is separate. To have that I99 on there was---is—if it's on that EOB it's part of the—what I would refer to for this purpose as the newer functionality.
>
> Q: Okay. Is the same true for Code 85?
>
> A: Yes.

The failure to address this testimony and how it affects predominance is an abuse of discretion. *See Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 548–49 (5th Cir. 2020) (reversing class action where district court responded to "warring factual contentions" concerning putatively common issues with "thin survey" and "unsupported assurance" as explanations for why predominance is satisfied). "Although individualized damage calculations do not necessarily defeat predominance, where the focus of litigation will involve individually assessing the amount of the refund and determining who is entitled to any such refund, a finding of predominance of class issues is precluded." *See Southwestern Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 923 (Tex. 2010) (noting that trial court found that computer program could be constructed to review bills and perform mathematical calculations to determine damages owed to each class member).

Progressive also argues that the certification order fails to consider individualized issues concerning whether an insured executed a valid assignment of benefits and whether Progressive received a waiver of interest. The certification order recites that an issue common to each class is whether Texas law prevents insureds, like the class members, from legally assigning

24

their statutory remedies with an assignment of benefits. Benefiel also testified that, "in some cases providers waive interest." Because the certification order does not meaningfully contemplate any way to address these issues, we are unable to judge whether common issues can be expected to predominate over individualized inquiries or how any individual issues may be addressed efficiently. *See* Tex. R. Civ. P. 42(c)(1)(D)(i), (vi), (viii); *Simien*, 674 S.W.3d at 264 (explaining that trial court must dispose of defense on merits before certifying class or address defense in certification order and explain how it will be tried).

As stated in the first issue, the certification order recites that the parties' legal dispute concerning the application of Section 542.056 to PIP Claims is a common issue suited for class-wide resolution that will be the focus of litigation. *See* Tex. R. Civ. P. 42(c)(1)(D)(iv). It also identifies as an issue common to the 15-Day Class whether Section 542.056 applies to Progressive's handling of bills or opening of PIP coverage. Instead of listing these issues as among the questions of law or fact common to the class, the trial court must resolve legal disputes regarding the elements of a claim or defense prior to certification. *Berry*, 667 S.W.3d at 283. A court cannot assess whether "questions of law or fact common to the members of the class predominate" without accurately identifying what those questions will be when the claim is litigated under a correct understanding of the law. *Id.* at 284 (quoting Tex. R. Civ. P. 42(b)(3)). Finally, the certification order identifies as an issue common to the 30-Day Class the legal question of whether the class members' remedies available under the PIP Statute are cumulative to those available under the Act. Therefore, the trial court did not resolve in the certification order the issue of what relief is legally available to the classes. We conclude that the trial court did not engage in the "cautious approach to certification" deemed essential and instead used the "certify now and

25

worry later" approach that the Texas Supreme Court has rejected. *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004).

In sum, there are warring contentions that may affect damages and assignment and waiver of benefits that the certification order does not address in sufficient detail. *See Chavez*, 957 F.3d at 549. Without a rigorous analysis of these issues, we cannot determine that individual issues would not overwhelm common ones. The failure to address these issues in the certification order and explain how they affect predominance is an abuse of discretion. *See Simien*, 674 S.W.3d at 264 (concluding that court's failure to address live defenses is abuse of discretion that is harmful by its nature). *Bernal* does not permit predominance to be a matter of an appellate court's confidence in a trial court's ruling; instead, it requires actual compliance with Rule 42. *Stromboe*, 102 S.W.3d at 691 (concluding predominance was not satisfied because it was not clear how statutory damages could be determined on class-wide basis). Because we conclude that Rule 42(b)(3)'s predominance requirement has not been satisfied, we sustain Progressive's issue.

**CONCLUSION**

The trial court abused its discretion in certifying the classes without an order confirming that it has rigorously analyzed the requirements of Rule 42. We cannot say that no class can be certified in this case. We conclude only that the certification order before us is improper. We reverse the trial court's certification order and remand to the trial court in light of our holding that the 15-Day Class claims are not legally baseless and for further proceedings consistent with this opinion.

26

_____
                 Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith
  Dissenting Opinion by Justice Triana

Reversed and Remanded

Filed:   December 31, 2024